IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LASHONDA T. SPRINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 125-195 |
| | ) | |
| REWORLD f/k/a COVANTA REWORLD PROJECTS, LLC; REWORLD HOLDING CORP; and COVANTA ENERGY, | ) ) ) ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in the above-captioned case. Because she is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. See Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*).

**I.    Screening the Amended Complaint**

**A.    Background**

Plaintiff names as Defendants (1) Reworld, (2) Reworld Holding Corp, and (3) Covanta Energy.[1] (Doc. no. 5, pp. 1, 2.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

---

[1] Plaintiff refers to Defendants collectively as "Reworld." (Doc. no. 5, p. 2.) It is unclear from the face of Plaintiff's amended complaint of which Defendant(s) she was an employee. Nonetheless, this discrepancy need not delay the Court because the amended complaint is due to be dismissed for the reasons described herein. See discussion *infra* Section I.B.

Plaintiff began working at Reworld's Augusta facility in September 2024. (Id. at 2.) As the only female driver, she was demeaned, told women should not be hired, and "subjected to false rumors, invasive surveillance, and a culture of hostility." (Id.) Upon reporting this misconduct and discrimination, she was denied a transfer, "disparaged" to Texas management, had her work schedule "manipulated," and "was deliberately isolated and surveilled." (Id.) Moreover, Plaintiff's supervisors deducted thirty-minute breaks from her pay even though she had to work through them, withheld storm-closure pay, and manipulated her timesheets. (Id.)

In March 2025, Plaintiff reported suspected embezzlement and misappropriation of company property and funds by her supervisors, which she reasonably believed were unlawful practices. (Id.) However, she was again subjected to retaliation, including "sabotage of her transfer application, denial of equal opportunities, and escalation of harassment." (Id. at 2-3.)

Due to working in these stress-inducing conditions, Plaintiff required medical leave. (Id. at 3.) However, Defendants did not provide Family and Medical Leave Act ("FMLA") guidance, mishandled Plaintiff's worker's compensation claims, and disclosed her medical information to other employees. (Id.) Furthermore, Plaintiff's supervisors falsely informed Texas management that "Plaintiff was incapable of doing her job," which harmed her transfer application and damaged her professional reputation, in turn preventing her from advancing in the company. (Id.)

As a result of Defendants' conduct, Plaintiff suffered "severe and ongoing emotional distress," including repeated emergency medical treatment for high blood pressure and heart monitoring. (Id.) She was also prescribed psychiatric medication, and she started therapy to cope with the "anxiety, depression, and trauma caused by the hostile work environment." (Id.) Plaintiff also experiences panic attacks, sleep disruption, and other negative impacts to her

physical and mental health. (Id.) These issues have affected Plaintiff's family because they caused her to feel overwhelmed at home, leading her son to have to be referred to a psychologist. (Id.) They also created financial issues due to withheld wages, medical expenses, and lost career opportunities. (Id.)

For relief, Plaintiff requests monetary damages, including compensatory, punitive, and back and front pay, as well as injunctive relief. (Id. at 4-5.)

Plaintiff attached an Equal Employment Opportunity Commission ("EEOC") Notice of Right to Sue letter to her original complaint. (Doc. no. 1, pp. 6-7.) Although she did not append this document to her amended complaint, for efficiency purposes, the Court considers this document as part of her amended complaint. The EEOC issued this letter on July 15, 2025. (Id. at 6.)

**B.    Discussion**

**1.    Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  The complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*).  However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Title VII Claim for Gender Discrimination Because She Does Not Identify Any Comparators

To state a claim for gender discrimination, "a plaintiff must show that (1) [s]he was member of a protected class; (2) [s]he was subjected to an adverse employment action; (3) [s]he was qualified for the job; and (4) h[er] employer treated 'similarly situated' employees outside h[er] class more favorably." Cooper v. Georgia Dep't of Transp., 837 F. App'x 657, 667 (11th

4

Cir. 2020) (citing Lewis v. City of Union City, Ga., 918 F.3d 1213, 1220–21 (11th Cir. 2019) (*en banc*)). Plaintiff offers little factual detail about the alleged gender discrimination other than to generally describe a difficult work environment. (See generally doc. no. 5.) She does not allege she was qualified for her job, nor does she specifically allege the adverse employment action she experienced as a result of Defendants' discrimination against her based on her gender. The complaint fails to state a claim for these reasons.

Furthermore, even if she had adequately plead these elements, Plaintiff's gender discrimination claim also fails because she offers no facts about any comparators. Concerning the fourth element, typically "a similarly situated comparator will have (1) engaged in the same basic conduct or misconduct; (2) been subject to the same employment policy, guideline, or rule; (3) ordinarily have the same supervisor; and (4) shared a similar employment or disciplinary history." Cooper, 837 F. App'x at 667. Although "a complaint need not set out facts 'to make out a classic McDonnell Douglas prima facie case[,]' the well-pleaded factual allegations of a complaint still must 'plausibly suggest that the plaintiff suffered an adverse employment action due to intentional [sex or gender] discrimination.'" Goldwire v. Alston, No. 421-CV-095, 2022 WL 680194, at *6 (S.D. Ga. Mar. 7, 2022).

Plaintiff generally alleges she "was demeaned as incapable of performing her duties, told women should not be hired, and subjected to false rumors, invasive surveillance, and a culture of hostility." (Doc. no. 5, p. 2.) However, she does not allege any information about comparators. (See generally id.) For example, she makes no allegations about how Defendants treated anyone else relative to her circumstances, much less how any such individual is sufficiently similarly situated to her. (See id.); Nurse v. City of Alpharetta, 775 F. App'x 603, 606 (11th Cir. 2019) (*per curiam*) ("Plaintiff has alleged no facts whatsoever suggesting

5

intentional discrimination. He has offered neither a comparator nor any other specific facts that would raise his claim above the purely speculative."). Accordingly, the Title VII gender discrimination claim should be dismissed.

### 3. Plaintiff Fails to State a Hostile Work Environment Claim Because She Does Not Establish the Workplace Was Permeated with Severe or Pervasive Discrimination

Plaintiff also fails to state a hostile work environment claim under Title VII based on gender discrimination. "[T]o state a claim under Title VII for a hostile work environment, Plaintiff must 'allege that: (1) [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.'" Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010). "To sustain a hostile work environment claim, the plaintiff must prove that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Mahone v. CSX Transp., Inc., 652 F. App'x 820, 823 (11th Cir. 2016) (*per curiam*) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

To start, Plaintiff plainly fails to connect much of the alleged conduct to her membership in a protected group. She alleges she experienced a hostile working environment because she "was demeaned as incapable of performing her duties, . . . subjected to false rumors, invasive surveillance, and a culture of hostility." (Doc. no. 5, p. 2.) None of these claims are connected to her sex or gender, much less her membership in any other protected group. Therefore, these allegations merely describe "an unpleasant working relationship" and "a difficult work

6

environment beset by recurring conflict and mistrust between herself" and unnamed colleagues. Mitchell v. Univ. of N. Ala., 785 F. App'x 730, 738 (11th Cir. 2019) (*per curiam*); see also Harris v. Pub. Health Tr. of Miami-Dade Cnty., 82 F.4th 1296, 1304 (11th Cir. 2023) (*per curiam*) ("[F]ederal law doesn't prohibit hostility in the workplace—only hostility caused by impermissible discrimination."). Accordingly, these allegations are insufficient to allege a Title VII hostile work environment claim.

As to her allegation about being told that "women should not be hired," such a comment does not rise to the level of pervasive or severe harassment necessary to sustain a hostile work environment claim. Regarding the fourth element of a hostile work environment claim, "[t]he 'severe or pervasive' requirement entails both an objective component—namely, that a reasonable person would find the environment hostile or abusive—and a subjective component." Id. at 1302 (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002)). Factors considered when evaluating objective severity include: "(1) the frequency of the conduct, (2) its severity, (3) whether it was 'physically threatening or humiliating, or a mere offensive utterance,' and (4) whether it unreasonably interfered with the employee's job performance." Id. The "standards for judging hostility are intended to be 'sufficiently demanding to ensure that Title VII does not become a general civility code.'" Tonkyro v. Sec'y, Dep't of Veterans Affs., 995 F.3d 828, 837 (11th Cir. 2021) (quoting Faragher v. Cty. of Boca Raton, 524 U.S. 775, 788 (1998)).

Notably, Plaintiff does not provide any further detail about this comment, such as who made this comment and the frequency with which she was demeaned in this way. (See doc. no. 5.) Significantly, "the 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' will not suffice in establishing a hostile work environment." Collins v. Peco Foods, Inc., No. 722-CV-1139, 2023 WL 6200806, at *5 (N.D. Ala. Sept. 22, 2023) (quoting Tonkyro,

7

995 F.3d at 837). Thus, even assuming Plaintiff subjectively perceived comments about not hiring women as sufficiently offensive, she fails to demonstrate such comment(s) where sufficiently severe or humiliating under the objective standard to establish an abusive working environment. Therefore, Plaintiff has failed to state a hostile work environment claim under Title VII.

    **4.    Plaintiff Fails to State a Title VII Retaliation Claim Because She Insufficiently Alleges Adverse Employment Action, and She Does Not Establish a Causal Connection**

"To state a claim for retaliation under Title VII, a plaintiff must allege the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." Arafat v. Sch. Bd. of Broward Cnty., 549 F. App'x 872, 874 (11th Cir. 2013) (*per curiam*) (citing Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001)). Here, although the facts are scant, the Court assumes without deciding Plaintiff's act of reporting various forms of alleged misconduct and discrimination constitutes a protected activity. However, her claim fails because she does not establish that she experienced any adverse employment action, and even if she did, she does not sufficiently allege a causal connection between her reporting and the adverse action.[2]

In explaining the effects of her reporting, Plaintiff claims she was denied a transfer, "disparaged to management," had work schedule "manipulated," and was isolated and

---

[2] The Court is aware Plaintiff also claims that she experienced retaliation for reporting alleged embezzlement and misappropriation of company funds. (Doc. no. 5, p. 2.) Indeed, under her "Legal Claims" section, Plaintiff alleges a claim for "Retaliation and Whistleblower Retaliation (Title VII, FLSA, and Protected Activity)." (Id. at 3.) However, although she alludes to "whistleblower" retaliation, she only cites to two statutes: Title VII and the Fair Labor Standards Act. (Id.) She provides no statutory support or other information relevant to a purported whistleblower retaliation claim such that the Court can screen her amended complaint for such a claim. Accordingly, the Court construes Plaintiff's amended complaint as alleging Title VII and FLSA retaliation claims. Plaintiff's barebones claim about whistleblower retaliation, without more, cannot sustain this cause of action.

8

surveilled. (Doc. no. 5, p. 2.) She further alludes to "denial of equal opportunities" and escalating harassment and retaliation. (Id. at 2-3.) "An adverse employment action, for purposes of Title VII liability, involves 'a *serious and material* change in the terms, conditions, or privileges of employment.'" Lindsey v. Burlington N. Santa Fe Ry. Co., 266 F. Supp. 2d 1338, 1344 (N.D. Ala. 2003) (quoting Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original)), *aff'd by* No. 03-13079, 2004 WL 443773 (11th Cir. Mar. 8, 2004). Based on the few facts presented, Plaintiff does not adequately allege any of the described events seriously and materially changed her employment. For example, it is unclear what impact, if any, the denial of a transfer had on the terms, conditions, or privileges of her employment. Likewise, although she states Defendants manipulated her hours and schedule, she does not describe the degree to which her work hours changed, much less that this change seriously altered her employment. Accordingly, she fails to establish this element because she fails to provide "more than conclusory statements, assertions[,] or labels" for the alleged adverse action. Earle v. Miami Dade Cnty., No. 24-20270-CIV, 2024 WL 5058210, at *3 (S.D. Fla. May 21, 2024) (citing Iqbal, 556 U.S. at 678).

Nonetheless, even assuming *arguendo* Plaintiff suffered an adverse employment action, she also fails to state a claim because she does not establish the requisite causal connection necessary to sustain her claim. "To demonstrate a causal connection between a protected activity and an adverse employment action, the plaintiff must show that: (1) the decisionmakers knew of [her] protected activity; and (2) the protected activity and adverse action were not wholly unrelated." Harris v. Florida Agency for Health Care Admin., 611 F. App'x 949, 951 (11th Cir. 2015) (*per curiam*) (citations omitted). Here, beyond her conclusory assertion that she experienced various negative effects after reporting misconduct and

9

discrimination, Plaintiff does not allege any facts showing the protected activity and adverse actions were related in any way. (Doc. no. 5, p. 2.) As already explained, conclusory allegations are insufficient to state a claim. See Gomez v. City of Miami, 696 F. Supp. 3d 1176, 1191 (S.D. Fla. 2023) (finding "plaintiff's contention that 'he was subjected to the adverse action in direct response to his opposition to practices that violate Title VII'" to be "'unadorned, the-defendant-unlawfully-harmed-me accusations' that cannot support a cause of action").

Nonetheless, despite not alleging any facts demonstrating the relatedness of the protected activity and adverse action, "[i]n the absence of other evidence, a plaintiff may show causation by temporal proximity." Blanc v. City of Miami Beach, 965 F. Supp. 2d 1350, 1355 (S.D. Fla. 2012) (citing Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006)). However, Plaintiff offers no information about the temporal proximity between her reports and the negative actions taken against her. (See generally doc. no. 5.) Because she fails to allege sufficient facts demonstrating the causal connection between her reporting and the adverse action, she fails to state a Title VII retaliation claim. Thus, this claim should be dismissed.

> 5. **Plaintiff Fails to State a Claim Under the Americans with Disability ("ADA") Act Because She Does Not Allege She Is Disabled, Nor Does She Allege She Is a Qualified Individual**

Plaintiff alleges claims for "Disability Discrimination and Failure to Accommodate (ADA)." (Doc. no. 5, p. 4.) A prima facie disability claim under the ADA requires allegations that Plaintiff (1) is disabled; (2) is a qualified individual as defined in the statute; and (3) was subjected to unlawful discrimination because of [her] disability. See Frazier-White v. Gee, 818 F.3d 1249, 1255 (11th Cir. 2016); Shepard v. United Parcel Serv., Inc., 470 F. App'x 726, 729 (11th Cir. 2012) (*per curiam*). The ADA defines a qualified individual as "an individual who,

10

with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The ADA requires an employer to make reasonable accommodations to an otherwise qualified employee with a disability, unless doing so would impose [an] undue hardship." Frazier-White, 818 F.3d at 1255. However, "[a]n accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question," and the duty to provide such reasonable accommodation is not triggered unless the employee makes a specific demand for the accommodation and demonstrates it is reasonable. Id. at 1255-56.

Here, Plaintiff fails to allege she is disabled and a qualified individual under the statute. First, she alleges a disability in only general terms by alleging she "required medical leave due to stress-induced conditions." (Doc. no. 5, p. 3.) The Court is unable to conclude she meets the definition of "disabled" based on this cursory description. Moreover, she makes no allegation she was qualified to perform the essential functions of a "driver." Beyond generally stating she "consistently performed her duties competently, safely, and with dedication," (doc. no. 5, p. 2), she does not provide any facts relating to the duties required of her as driver, let alone allege she was able to perform the essential functions of her job without accommodation. For example, she does not even describe the type of vehicle she drove for Defendants. (See generally id.) Nor has she alleged she could perform the essential functions of her job with a reasonable accommodation. In sum, Plaintiff completely fails to address this essential element of a prima facie claim for discrimination under the ADA. See Ryerson v. Jefferson Cnty. Comm'n, No. 20-14684, 2021 WL 3629906, at *2-3 (11th Cir. Aug. 17, 2021) (per curiam) (citing Frazier-White and explaining failure to show a plaintiff is a "qualified individual" as statutorily defined is fatal to ADA claim).

Accordingly, because her amended complaint lacks sufficient detail to state an ADA claim, Plaintiff's ADA claims should be dismissed.

      **6.    Plaintiff's FMLA Claim Fails Because She Does Not Allege Certain Threshold Elements, Nor Does She Allege Defendants Denied Her Any FMLA Benefit**

To state a claim for interference with rights under the FMLA, 29 U.S.C. § 2601 et seq., "the employee must allege that [she] was entitled to a benefit under the FMLA and was denied that benefit." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1247 (11th Cir. 2015) (citing Strickland v. Water Works and Sewer Bd. of Birmingham, 239 F.3d 1199, 1206-07 (11th Cir. 2001)). Moreover, to be a "covered employee" under the FMLA, "the employee must have been employed for at least twelve months by the employer and worked at least 1,250 hours during the previous twelve-month period." Id. (citing 29 U.S.C. § 2611(2)(A)). Additionally, "[t]he FLMA only applies to private-sector employers with fifty or more employees. Sierra v. Port Consol. Jacksonville, L.L.C., No. 3:14-CV-1496, 2016 WL 927189, at *10 (M.D. Fla. Mar. 4, 2016) (citations omitted); see also 29 U.S.C. § 2611(4)(A).

Here, for her FMLA interference claim, Plaintiff states she required medical leave, but "Defendants failed to provide FMLA guidance, mishandled workers' compensation claims, and unlawfully disclosed Plaintiff's medical information to other employees." (Doc. no. 5, p. 3.) She fails to state an FMLA interference claim for several reasons. First, she does not allege Defendants are a private-sector employer with fifty or more employees. (See generally id.) Plaintiff's conclusory assertion Defendants "are employers within the meaning of . . . [the] FMLA" is insufficient because she provides no facts to plausibly plead the validity of this assertion. (Id. at 2.) Nor does Plaintiff allege she is a covered employee. (See generally id.) She does not allege she has been employed by Defendants for at least twelve months, nor that she had worked the

12

requisite amount of hours to qualify. (See generally id.)  Therefore, because she fails to allege the threshold elements for an FMLA interference claim, this claim should be dismissed.

However, even if the Court assumes *arguendo* her employer meets the statutory definition, Plaintiff is a covered employee, and she entitled to a benefit under the FMLA, Plaintiff fails to state a claim for a more fundamental reason:  she does not allege she was *denied* a benefit under the FMLA.  (See generally id.)  Instead, she contends Defendants did not follow certain guidance, mishandled her claims, and improperly disclosed her medical information to others.  But nowhere does she state Defendants denied her any FMLA benefit.  Rather, the issues about which Plaintiff complains are ancillary to the denial of an FMLA benefit.  Even accepting that Defendants acted as she describes, there is no allegation Defendant deprived her of a benefit by engaging in any of the described conduct.  Therefore, because Plaintiff also fails to establish this element, her FMLA interference claim fails.

> 7. **Plaintiff Fails to State a Claim for a Fair Labor Standards Act ("FLSA") Violation Because She Does Not Plead Facts Establishing She or Defendants Engaged in Interstate Commerce, Nor Does She Allege Sufficient Factual Detail About the Purportedly Withheld Wages, Timesheet Manipulation, and Retaliation**

Plaintiff alleges violations of the FLSA, codified at 29 U.S.C. § 203 et seq., because Defendants deducted her pay for thirty-minute breaks even though she worked through these breaks, withheld storm-closure pay, and manipulated time records. (Doc. no. 5, p. 2.)  She also claims she experienced FLSA retaliation.  (Id. at 3.)  The Court first addresses Plaintiff's claims about withheld pay and timesheet manipulation, then it discusses her FLSA retaliation claim.

"[T]he requirements to state a claim of a FLSA violation are quite straightforward.  The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act."

13

Sec'y of Lab. v. Labbe, 319 F. App'x 761, 763 (11th Cir. 2008) (*per curiam*).  District courts in the Eleventh Circuit have explained, "[t]o state a claim under the FLSA for unpaid wages, an employee must allege (1) an employment relationship; (2) that the employer or employee engaged in interstate commerce; and (3) that the employer failed to pay overtime compensation and/or minimum wages."  Ray v. Adams & Assocs., Inc., 599 F. Supp. 3d 1250, 1256 (S.D. Fla. 2022) (citing Morgan v. Family Dollar Stores, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)).  Regarding the failure to keep payroll records, the FLSA provides:  "Every employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him."  29 U.S.C. § 211(c).

Here, the FLSA unpaid wages and payroll claims in Plaintiff's amended complaint are deficient for several reasons.  First, Plaintiff does not allege any information about whether she or Defendants engaged in interstate commerce such that they are covered under the FLSA.  See 29 U.S.C. § 206(a); 29 U.S.C. § 207(a); (see generally doc. no. 5.)  As already discussed with regard to her FLMA claim, her conclusory assertion Defendants are "employers within the meaning of . . . [the] FLSA" is insufficient.  (Doc. no. 5, p. 2.)  Accordingly, the Court cannot conclude the FLSA even applies to Plaintiff's claims.

Even assuming Plaintiff can show the requisite interstate commerce nexus, to state a claim for unpaid wages under the FLSA, Plaintiff must provide more than conclusory allegations about the alleged unpaid wages owed to her.  See Earle, 2024 WL 5058210, at *2-3 (concluding plaintiff did not state an FLSA wage theft claim and agreeing with defendant that "[a] complaint filed under the FLSA shall include, at a minimum[:]  a. an initial estimate of the total amount of alleged unpaid wages; b. a preliminary calculation of such wages; c. the approximate period during which the

alleged violations occurred; and d. the nature of the wages"); see also Sanchez v. Piripi VMP, LLC, No. 15-24166-CIV, 2016 WL 950954, at *2 (S.D. Fla. Mar. 7, 2016) ("This Court agrees with the Defendants that this complaint merely contains a formulaic recitation of the elements of a FLSA cause of action. . . . Plaintiff merely states that she worked overtime and was not paid.").

Here, Plaintiff provides no factual detail whatsoever regarding the wages purportedly owed to her. (See generally doc. no. 5.) For her claim about not being paid when she worked through breaks, Plaintiff does not allege further information about this claim and notably does not state that working through these breaks caused her to work overtime. Cf. Cooley v. HMR of Ala., Inc., 747 F. App'x 805, 807 (11th Cir. 2018) (*per curiam*) (finding employees stated a claim where they "allege[d] that they routinely worked more than 40 hours per week without full compensation because [employer] deducted meal breaks from their pay even when they were not completely relieved from duty" (internal quotations omitted)). Likewise, regarding her claim for withheld "storm-closure" pay, she does not describe any information whatsoever about the circumstances surrounding this withholding, nor does she explain how any FLSA provision(s) support her claim about storm-closure pay. Therefore, she fails to state a claim for either allegation.

Regarding record keeping, "The Code of Federal Regulations requires an FLSA employer to keep records identifying, among other things, the hours worked each work day and total for each week, total straight time and per day and week and total overtime, wages and date of payment and pay period. Hornady v. Outokumpu Stainless USA, No. CV 1:18-00317, 2022 WL 495186, at *12 (S.D. Ala. Feb. 17, 2022) (citing 29 C.F.R. § 516.2). However, Plaintiff fatally provides no detail about the way(s) in which Defendants' records were unreliable or inaccurate or otherwise failed to satisfy the FLSA's requirements, and thus she fails to state a claim.

In sum, Plaintiff has not pled sufficient factual detail such that the Court can "draw the

reasonable inference that [Defendants] [are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Indeed, she has essentially pled no facts to support any FLSA claim beyond her barebones assertions of alleged violations. Accordingly, because her FLSA claims regarding unpaid wages and time record manipulation are too vague and conclusory, they should be dismissed for failure to state a claim.

Finally, to the extent Plaintiff brings a claim for FLSA retaliation, (id. at 3), this claim fails as well. "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: (1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000) (internal quotations omitted). Here, Plaintiff does not allege she engaged in any protected activity under the FLSA or otherwise explain how she asserted her FLSA rights. Further, because she relies on conclusory and vague statements concerning alleged adverse action and causation, she does not sufficiently allege either of these elements. For these reasons, she fails to state a claim for FLSA retaliation.

In sum, because Plaintiff fails to state a claim for any violation of the FLSA, these claims should be dismissed.

### 8. Any Potential State Law Claims Should Be Dismissed Without Prejudice

Finally, Plaintiff brings state law claims for defamation, invasion of privacy, unauthorized disclosure of her medical information, and intentional inflection of emotional distress. (Doc. no. 5, p. 4.) However, these claims should be dismissed without prejudice so that Plaintiff may pursue them, if she so chooses, in state court. Federal district courts have

original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." Id. § 1367(a).  However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. . . .  We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, the Court has determined the complaint fails to state a claim that could serve as the basis for original federal court jurisdiction.  Thus, without the federal claim, the Court concludes any potential state law claims should be dismissed without prejudice.  Vibe Micro,

17

Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well. . . . [I]t usually should do so without prejudice as to refiling in state court.").

## II. Conclusion

For the reasons explained above, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** and **CLOSED** because Plaintiff fails to state a federal claim upon which relief can be granted. The Court also **REPORTS** and **RECOMMENDS** any potential state law claims be **DISMISSED WITHOUT PREJUDICE**.

SO REPORTED and RECOMMENDED this 18th day of November, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA